

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-5-2009

# USA v. Harley

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1547

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Harley" (2009). *2009 Decisions.* Paper 1777.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1777

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1547
_____

UNITED STATES OF AMERICA

v.

RICHARD J. HARLEY,

Appellant


On Appeal From the United States District Court
for the Middle District of Pennsylvania
(3:CR-96-286)
District Judge:  Honorable Thomas Vanaskie

Submitted Under Third Circuit LAR 34.1(a)
January 5, 2009

Before: CHAGARES and HARDIMAN, <u>Circuit</u> <u>Judges</u>, and GARBIS,[*] <u>District Judge</u>


(Filed:  March 5, 2009)


_____

OPINION OF THE COURT
_____


_____

[*]The Honorable Marvin J. Garbis, Senior District Judge for the United States
District Court for the District of Maryland, sitting by designation.

CHAGARES, Circuit Judge.

Richard J. Harley appeals from an order modifying the conditions of his supervised release. We will affirm.

## I.

Because we write only for the parties, we will recite only the essential facts. On May 12, 2000, a jury convicted Harley of more than a dozen federal felonies stemming from his having marketed bogus therapeutic remedies to AIDS patients. On March 31, 2001, the District Court sentenced him to five years of imprisonment and two years of supervised release. The supervised release provision of the District Court's judgment and commitment order included a condition requiring Harley to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." It did not, however, include a condition requiring Harley to submit to DNA collection.

The 2000 DNA Analysis Backlog Elimination Act (DNA Act), in effect when Harley was sentenced, required individuals convicted of certain enumerated crimes to submit to DNA collection while on supervised release. It is undisputed that Harley's crimes were not covered by the DNA Act. On October 30, 2004, however, Congress passed the Justice for All Act (Justice Act) which amended the DNA Act to require DNA samples from individuals convicted of "any [federal] felony" and thereby brought Harley within its sweep. 42 U.S.C. § 14135a(d)(1).

Harley's term of supervised release began August 17, 2005. On December 19,

2

2005, Harley's probation officer instructed him to provide a DNA sample. Harley refused. His probation officer then filed a petition for violation of the terms of Harley's supervised release. The District Court held a hearing and on February 3, 2006 entered an order modifying the terms of Harley's supervised release to include submission to DNA collection. Harley once again refused to provide a DNA sample. He then filed this appeal.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e)(3) and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1291.[1]

This Court exercises plenary review over the legal interpretation of the Justice Act and the determination whether it violates the United States Constitution. United States v. Sczubelek, 402 F.3d 175, 178 (3d Cir. 2005); United States v. Cooper, 396 F.3d 308, 310 (3d Cir. 2005).

## III.

Harley challenges the District Court's order modifying supervised release to include submission to DNA collection pursuant to the Justice Act on three grounds, namely that the Justice Act violates (1) the retroactivity requirements established by INS

---

[1] The appeal is not moot. The District Court has jurisdiction to require compliance with the supervised-release condition of submission to DNA collection even though Harley's supervised release term expired August 17, 2007. United States v. Sczubelek, 402 F.3d 175, 178-81 (3d Cir. 2005).

v. St. Cyr, 533 U.S. 289 (2001), and Landgraf v. USI Film Prods., 511 U.S. 244 (1994); (2) the Ex Post Facto clause of the Constitution; and (3) the Fourth Amendment.

A.

First, Harley argues that the Justice Act cannot apply to him because it was not enacted until after he was sentenced, and because the DNA-collection statute in effect when he was sentenced (the DNA Act) did not cover his crimes. We disagree.

If Congress indicates (expressly or impliedly) that it intends a statute to apply retroactively, the inquiry ends. If not, the statute applies retroactively only if it does not "attach[] new legal consequences to events completed before its enactment." St. Cyr, 533 U.S. at 321 (internal quotation marks omitted). In making this latter determination, a court is guided by considerations of fair notice, reasonable reliance, and settled expectations. Id. (internal quotation marks omitted).

In the first place, Congress has expressed its desire that the Justice Act apply to individuals convicted and sentenced before its enactment. The statute provides that the probation officer shall collect DNA from anyone who "is, or has been" convicted of a qualifying offense. The word "is" indicates that mandatory DNA collection applies to all individuals convicted of a qualifying offense after the passage of the statute. The phrase "has been," in order not to amount to pure surplusage, must mean that mandatory DNA collection also applies to all individuals who were convicted of a qualifying offense before the passage of the statute. This language indicates that the date of conviction is

4

unimportant.  But see United States v. Reynard, 473 F.3d 1008, 1014-15 (9th Cir. 2007) (interpreting unamended DNA Act).  And the statute's failure to mention sentencing indicates that the date of sentencing is likewise unimportant.

In any event, the Justice Act does not attach legal consequences to the completed conduct underlying Harley's federal convictions in a way that deprived him of fair notice or disturbed his settled expectations.  Indeed, it is difficult to conclude that Harley had any objectively reasonable settled expectations in the first place.  Even though Harley's supervised release (as initially imposed) did not contain a condition requiring him to submit to DNA testing, it did contain a condition requiring him to obey the directives of his probation officer who requested that Harley provide a sample.  Further, Harley presumably knew about 18 U.S.C. § 3582(e)(2), which permitted (and permits) modification of the conditions of supervised release so long as certain procedures are followed.  True, 18 U.S.C. § 3583(d) provided that the court "shall" order DNA collection "if" the crime was covered by the DNA Act (which Harley's crimes concededly were not).  But, it did not provide that the court may not order DNA collection in any other instance.[2]

_____

[2] As further evidence of his settled expectations, Harley points to a May 2005 Federal Bureau of Prisons (BOP) form indicating that no DNA sample was required as a condition of supervised release (as initially imposed).  This document does factor into the total mix of information used to determine objective reasonableness.  But it cannot outweigh, among other factors, the notice provided by the terms of a properly enacted statute, namely 18 U.S.C. § 3582(e)(2), which permits modification of supervised release.  Further, this document's weight is diminished by the fact that it is not (and does not

5

B.

Next, Harley argues that the Justice Act violates the Ex Post Facto clause, because it increases the penalty for his felony convictions entered before its passage (when only the unamended DNA Act was on the books). We reject this argument.

"If the intention of the legislature [in enacting a particular statute that has retroactive application] was to impose punishment, that ends the inquiry"; the Ex Post Facto clause has been violated. Smith v. Doe, 538 U.S. 84, 92 (2003). If not, the statute does not violate the Ex Post Facto clause unless it is "so punitive either in purpose or in effect as to negate Congress's intention" to create a civil regulatory scheme. Id. (internal quotation marks omitted). A statute may be invalidated on this latter ground "only [on] the clearest proof." Id. (internal quotation marks omitted).

The evidence suggests that Congress did not intend the Justice Act to impose punishment. Rather, it suggests that Congress intended the Justice Act to facilitate FBI's development of a DNA database designed to protect the public by aiding law enforcement. The text of the statute provides that the DNA samples collected become part of FBI's Combined DNA Index System and may be used "for law enforcement identification purposes" and for various types of statistical research so long as personal information is removed. 42 U.S.C. §§ 14132(b)(3)(A), (D), 14135e(b). Additionally, it is relevant that the Justice Act is codified in Title 42, "The Public Health and Welfare,"

_____

purport to be) a court order; it is merely an administrative checklist provided by the BOP.

6

rather than Title 18, "Crimes and Criminal Procedure." See Smith, 538 U.S. at 94

(finding probative that particular statute was contained in state's "Health, Safety, and

Housing Code" rather than criminal code). Put simply, Congress did not intend the

Justice Act to constitute punishment. United States v. Hook, 471 F.3d 766, 775-76 (7th

Cir. 2006); see Reynard, 473 F.3d at 1018-21 (interpreting unamended DNA Act).[3]

In addition, the Justice Act is not so punitive in purpose or effect to negate this

congressional intent. The seven factors enumerated by the Supreme Court in Kennedy v.

Mendoza-Martinez, 372 U.S. 144 (1963), guide this inquiry. That is, we must consider

> [(1) w]hether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment — retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned . . . .

372 U.S. at 168-69. Harley recognizes that every court of appeals to have applied these

factors to the Justice Act, the unamended DNA Act, and similar state laws has held that

such laws do not have fatally punitive effects. He argues, however, that those courts have

underestimated the magnitude of the affirmative disability — the second Kennedy factor

---

[3] The statute need not be wholly nonpunitive to survive an Ex Post Facto challenge; it need only be mostly nonpunitive. See Smith, 538 U.S. at 94. Therefore, that the information may also be used in judicial proceedings does not nullify the Justice Act's nonpunitive aspects. Additionally, when DNA collected pursuant to the Justice Act is used in judicial proceedings, the statute levels the playing field by mandating that the defendant, too, have access to the information. 42 U.S.C. §§ 14132(b)(1)(B)-(C), 14135e(b).

7

— of DNA sampling and indexing. They have failed, Harley contends, to appreciate that the Justice Act allows the Government to re-test DNA samples as the need arises and therefore to extract more and more personal, private information as science advances over time. As Harley puts it, the magnitude of the disability is staggering because "today's 'junk DNA'" — DNA from which information cannot be extracted — "is tomorrow's genetic treasure trove." Appellant's Br. at 22 (footnote omitted).

Unfortunately for Harley, we are called upon to decide only today's case, not tomorrow's. Our review is confined to the present burden imposed by DNA sampling and analysis. Cf. United States v. Kincade, 379 F.3d 813, 837-38 (9th Cir. 2004) (emphasizing, in Fourth Amendment context, that hypothetical future privacy intrusions created by DNA analysis do not factor into determining whether DNA Act is constitutional). We are satisfied that the Justice Act's use restrictions (which are enforced with criminal sanctions) effectively limit the disclosure of personal information and therefore contain and minimize the disability imposed by the Justice Act at the present time. See 42 U.S.C. §§ 14132(b)(3), 14133(c); cf. Kincade, 379 F.3d at 837-38 & n.34. Moreover, it does not appear that Harley has ever tried to establish the facts underlying his "treasure trove" assertion in the District Court by conventional means, such as requesting an adversarial hearing, presenting evidence, and subjecting that evidence to cross-examination. In any event, the "treasure trove" argument does not change our evaluation of the six other Kennedy factors which suggests that the Justice

8

Act does not have impermissible punitive effects and therefore does not violate the Ex Post Facto clause.  See Reynard, 473 F.3d at 1020-21 (interpreting unamended DNA Act); Hook, 471 F.3d at 775-76.

C.

Finally, Harley argues that the Justice Act violates the Fourth Amendment because DNA collection pursuant to it constitutes an unreasonable search.  We find this contention unpersuasive.

Harley concedes that in Sczubelek, we held that DNA collection pursuant to the unamended DNA Act did not constitute an unreasonable search.  He argues that the opposite result should obtain when considering the Justice Act.  First, Harley argues that because he, unlike Sczubelek, is not a violent offender, collection of his DNA, unlike collection of Sczubelek's, will not serve to protect society.  This is factually untrue. Harley's crimes, though not violent, were not victimless.  He defrauded AIDS patients by hawking a bogus therapeutic remedy.  Collecting Harley's DNA will serve to protect the public against fraud crimes in the same way that collecting violent offenders' DNA will serve to protect the public against violent crimes.

Second, Harley argues that he, unlike Sczubelek, had an expectation of privacy in his DNA.  There was a DNA-collection statute on the books at the time of Harley's sentence (the DNA Act), the argument goes, and that statute did not cover Harley's crimes.  This argument fails because, as we have already explained, Harley was put on

9

notice by 18 U.S.C. § 3582(e)(2) that a court could modify the conditions of his supervised release. Moreover, we do not find this situation meaningfully different from Sczubelek's — where no DNA-collection statute at all was on the books until after Sczubelek begain serving his release term — which the Court in that case found "immaterial" to its Fourth Amendment analysis. 402 F.3d at 184 n.3.

Third, Harley argues that the Sczubelek Court incorrectly held that "'the privacy interests implicated by the collection of DNA are minimal.'" Appellant's Br. at 29 (quoting Sczubelek, 402 F.3d at 185). Even if this is true, Harley does not appear to take issue with the "other factors" that convinced the Sczubelek Court that DNA collection was a reasonable search. 402 F.3d at 187. But, more importantly, as noted above, it does not appear that Harley ever sought to develop facts tending to prove any of the allegedly offensive features of DNA sampling (on which he now seeks to rely) in the District Court.

We hold that Harley has not successfully distinguished Sczubelek and has not demonstrated that the Justice Act violates the Fourth Amendment. Kaemmerling v. Lappin, __ F.3d __, 2008 WL 5396823, *13 (D.C. Cir. Dec. 30, 2008) (accord); United States v. Stewart, 532 F.3d 32, 34-36 (1st Cir. 2008) (same); United States v. Banks, 490 F.3d 1178, 1183-94 (10th Cir. 2007) (same); Reynard, 473 F.3d at 1020-21 (same) (interpreting unamended DNA Act); Hook, 471 F.3d at 771-73 (same).

IV.

For the foregoing reasons, we will affirm the District Court's order modifying the

conditions of supervised release.