RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

LARRY J. COCCIA,

        *Defendant-Appellant.*

No. 08-1915

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 06-00034-001—Robert Holmes Bell, District Judge.

Argued: January 13, 2010

Decided and Filed: March 19, 2010

Before: MARTIN, BOGGS, and WHITE, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Clare E. Freeman, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Hagen W. Frank, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Clare E. Freeman, Richard D. Stroba, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Raymond E. Beckering III, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

————————————

## OPINION

————————————

HELENE N. WHITE, Circuit Judge. Defendant Larry J. Coccia ("Coccia") appeals the district court's judgment, which found that Coccia had violated a term of his supervised release, continued his supervised release, and required him to provide a DNA sample. Coccia asserts that the district court erred in finding that he had violated his supervised release, and that requiring him to provide a DNA sample under a statute that did not apply

1

to him at the time of his original conviction and sentence violates the *Ex Post Facto* Clause of the United States Constitution.  We **AFFIRM** the district court's judgment because a review of the record confirms that the court found Coccia in violation of the terms of his supervised release, and collecting DNA from Coccia was not unconstitutional.

## I. Background

Coccia, who has a history of psychiatric problems, was found guilty in Massachusetts of possessing a firearm while subject to a restraining order in violation of 18 U.S.C. § 922(g)(8), and was sentenced to 60 months in custody to be followed by three years of supervised release.  Jurisdiction over Coccia's term of supervised release was subsequently transferred to the Western District of Michigan.

After Coccia failed to appear for two appointments to provide a DNA sample, his Probation Officer, Rhonda J. Wallock ("Wallock"), scheduled a third appointment for March 11, 2008.  On March 3, 2008, Wallock received a letter from Coccia dated February 24, 2008, in which Coccia stated his intention to relocate on March 4, 2008 to Sault Ste. Marie in the Upper Peninsula of Michigan, which is in the Northern Division of the Western District of Michigan.  Coccia's letter stated "Please note my new address," and provided the address of a motel in Sault Ste. Marie.

Wallock spoke with Coccia by phone on March 5, 2008, and Coccia confirmed that he was in Sault Ste. Marie and intended to remain there.  Wallock informed Coccia that he had to return to have his DNA collected, and that he had failed to provide her with ten days notice of his relocation as required by the terms of his supervised release.  During the conversation, Coccia claimed that Wallock was no longer his probation officer because he had relocated, and Wallock informed Coccia that his understanding was incorrect.

On March 6, 2008, Coccia appeared at the U.S. Probation Office in Marquette, Michigan, and asked to speak with his "new" probation officer.  An officer there informed Coccia that Wallock was still his probation officer and that he had to return to Grand Rapids, in the Southern Division, for DNA collection.  Coccia appeared anxious and agitated, and was acting bizarrely.  Afer leaving the probation office, Coccia went to the federal

courthouse where he asked to see District Judge Robert Bell. Based on his demeanor, the court security officers ordered Coccia to leave the courthouse.

Informed of these events, Wallock petitioned for an arrest warrant. A magistrate judge granted the petition and issued a warrant for Coccia's arrest based on his violating Standard Condition Number Six of his supervised release, which required him to provide ten days notification before relocation. United States Marshals arrested Coccia.

On July 1, 2008, the district court held a hearing regarding Coccia's alleged violation of his supervised release. Coccia's counsel stated at the hearing that he was "kind of pleading no contest" and that he believed that Coccia had engaged in a "technical violation" of Standard Condition Six, but that Coccia's move to the motel "didn't really qualify as much of a residence or a permanent residence or a permanent change." Coccia's counsel requested that should the court find a violation, the court not revoke Coccia's supervised release, but instead order it continued.

After hearing testimony regarding the relevant events from Wallock, the district court arranged for the DNA sample to be taken by Coccia's brother-in-law, who is a doctor and who employed Coccia part-time. The district court stated:

> What we're going to do is this. I'm going to continue Mr. Coccia on supervised release. I'm going to require that within the next 30 days Mr. Coccia in conjunction with his brother-in-law and in conjunction with his employment get the DNA test done.

Coccia's counsel did not raise any objections.

The minutes of the hearing note that the court found Coccia guilty of violating Standard Condition Number Six, and in its Amended Judgment the district court explicitly found Coccia in violation of Standard Condition Number Six based on his failure to provide Wallock with ten days prior notice of his change of residence. The Amended Judgment also modified the conditions of supervised release, including requiring Coccia to submit to DNA collection within thirty days of the date of the Judgment.

Coccia complied with the order to provide a DNA sample, but also filed a notice of appeal. On March 21, 2009, Coccia's term of supervised release expired, and on March 25, 2009, Coccia was discharged from supervised release.

## II. Analysis

### A.

Coccia's first claim of error, challenging the Amended Judgment's finding that he violated the terms of his supervised release on the basis that the district court did not make an explicit finding during the hearing, is likely moot. However, because the argument is so easily addressed and rejected, we will simply do so.

The district court's finding of a violation was implicit in the course of the proceedings. Such a finding was entered in the contemporaneous minutes, and was stated in the order. A court speaks through its written orders and judgments, and where, as here, such a judgment is consistent with the record of the proceedings, there is no reason to reverse. *See United States v. Busacca*, 977 F.2d 583, at *1 (6th Cir. 1992) (unpublished table decision) (citing *United States v. Bergmann,* 836 F.2d 1220, 1221 (9th Cir. 1988)).

### B.

Coccia claims that requiring him to provide a DNA sample under 42 U.S.C. § 14135a(d) violates the Constitution's prohibition on *ex post facto* laws. Although Coccia has already complied with the district court's order and provided a blood sample, he requests as relief the removal of his DNA from the federal database. Because Coccia did not raise this claim below, our review is for plain error. *United States v. Olano*, 507 U.S. 725, 731-32 (1993).

In 1994, Congress passed the Violent Crime Control and Law Enforcement Act, authorizing the FBI to establish a national index of DNA samples from convicted federal offenders. Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (Sept. 13, 1994). Pursuant to this Act, the FBI created the Combined DNA Index System ("CODIS"), which allows law enforcement officials to link DNA found at a crime scene to DNA on file. Congress allowed for certain federal offenders to be included in CODIS in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

AEDPA § 811(a)(2), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996). Subsequently, the Department of Justice determined that AEDPA did not provide sufficient authority for the collection of DNA from federal offenders, and in response Congress passed the DNA Analysis Backlog Elimination Act of 2000 ("DNA Act"), §3, Pub. L. No. 106-546, 114 Stat. 2726 (2000) (codified at 42 U.S.C. §§ 14135-14135e). The DNA Act mandated the collection of DNA samples from prisoners, parolees, and individuals on probation who have committed certain qualifying offenses. Failure of an individual covered by the DNA Act to submit to DNA collection constitutes a Class "A" misdemeanor subject to punishment in accordance with Title 18. 42 U.S.C. § 14135a(a)(5). The information maintained in CODIS may be disclosed only to law enforcement agencies for "identification purposes," "in judicial proceedings," "for criminal defense purposes," and, if personally identifiable information is first removed, for statistical and quality control purposes. 42 U.S.C. §14132(b)(3)(A)-(D).

It is undisputed that at the time Coccia was convicted of possessing a firearm while under a restraining order he was not covered by the DNA Act because his crime was not one of the enumerated offenses. However, on October 30, 2004, Congress passed the Justice for All Act of 2004, § 203, Pub. L. No. 108-405, 118 Stat. 2260 (codified at 42 U.S.C. § 14135a(d)) ("Justice Act"), which amended the DNA Act to require DNA samples from individuals convicted of "any [federal] felony." 42 U.S.C. § 14135a(d)(1) (2004). Coccia argues that requiring him to provide a DNA sample violates the *Ex Post Facto* Clause,[1] because he was not required to do so by statute at the time of his conviction and sentencing.

The *Ex Post Facto* Clause prohibits Congress from passing laws that:

> (1) "make[ ] an action, done before the passing of the law, and which was innocent when done, criminal; and punish[ ] such action," (2) "aggravate[ ] a crime," making it "greater" than when committed, (3) increase the punishment beyond that prescribed when the action was done, or (4) "alter [ ] the legal rules of evidence, [to] receive[ ] less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."

---

[1] Article 1, § 9, cl. 3 of the U.S. Constitution states: "No bill of attainder or ex post facto law shall be passed."

*United States v. Eberhard*, 525 F.3d 175, 178 (2nd Cir. 2008) (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798)).

Coccia argues that requiring him to submit a DNA sample violates the *Ex Post Facto* Clause by increasing his punishment beyond that applicable at the time of his conviction and sentencing.

The DNA Act explicitly applies retroactively:

> The probation office responsible for the supervision under Federal law of an individual on probation, parole, or supervised release shall collect a DNA sample from each such individual who is, *or has been*, convicted of a qualifying Federal offense . . .

42 U.S.C. § 14135a(a)(2) (emphasis added); *see also United States v. Harley*, 315 F. App'x 437, 440 (3rd Cir. 2009) (unpublished table decision). "If the intention of the legislature [in enacting a statute that has retroactive application] was to impose punishment, that ends the inquiry," and the statute violates the *Ex Post Facto* Clause. *Smith v. Doe*, 538 U.S. 84, 92 (2002). "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)). In making the determination that a statute deemed "civil" by the legislature is, in actuality, punitive, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty," *Smith,* 538 U.S. at 92 (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)), because the courts "ordinarily defer to the legislature's stated intent." *Id.* (quoting *Hendricks*, 521 U.S. at 361).

Coccia concedes that "[c]ourts considering this issue have concluded that Congress intended a regulatory scheme—rather than a punitive purpose—in enacting the DNA Act," and does not argue otherwise. *See, e.g., United States v. Hook*, 471 F.3d 766, 776 (7th Cir. 2006) (holding DNA Act as amended by the Justice Act "punitive in neither purpose nor effect"); *Johnson v. Quander,* 440 F.3d 489, 500-01 (D.C. Cir. 2006) (same); *Harley*, 315 F. App'x at 441 ("The evidence suggests that Congress did not intend the Justice Act to impose punishment."). Coccia argues, however, that the effect of the DNA Act is

sufficiently punitive to override Congress's intent. We therefore look to the seven factors for evaluating such a claim enumerated by the Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963):

> [(1) w]hether the sanction involves an affirmative disability or restraint, [(2)] whether it has historically been regarded as punishment, [(3)] whether it comes into play only on a finding of scienter, [(4)] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [(5)] whether the behavior to which it applies is already a crime, [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it, and [(7)] whether it appears excessive in relation to the alternative purpose assigned . . . .

Coccia concedes that all courts that have applied these factors to the DNA Act as amended by the Justice Act have held that it does not have an overriding punitive effect. *See, e.g., Harley*, 315 F. App'x at 441 (recognizing that "every court of appeals to have applied these factors to the Justice Act, the unamended DNA Act, and similar state laws has held that such laws do not have fatally punitive effects."). He argues, however, that those courts' conclusions "do not concur with the reality of the impact of the Act on offenders."

Whether the DNA Act has an overriding punitive effect is an issue of first impression in this Circuit. We too conclude that the DNA Act is not so punitive in effect as to override its regulatory purpose, and thus that applying it to Coccia does not violate the *Ex Post Facto* Clause.

Coccia argues that three of the *Kennedy* factors favor finding the DNA Act functionally punitive. Coccia first claims that in relation to the first factor, the DNA Act confers a substantial disability because DNA collection "involves an intrusion into one's personal and bodily sphere; it involves the collection and cataloguing of the most important and intimate details of one's physical being. It involves discomfort." The Ninth Circuit in *United States v. Reynard*, 473 F.3d 1008, 1016 (9th Cir. 2007), agreed that the DNA Act confers a disability by requiring an individual's submission "to the physical intrusion of blood extraction and also creates a 'disability' by incorporating . . . DNA information into a nationwide database," but concluded that the intrusion was minimal. *Reynard* held that the inclusion of the DNA sample in the CODIS database was a minimal intrusion because the

genetic markers used to identify individuals are "purposely selected because they are not associated with any known genetic trait." *Reynard*, 473 F.3d at 1016. Further, blood tests generally are considered minimally intrusive. *Hook*, 471 F.3d at 776 (citing *Jones v. Murray*, 962 F.2d 302, 306 (4th Cir. 1992)); *see also Gilbert v. Peters*, 55 F.3d 237, 238-39 (7th Cir. 1995) ("Both federal and state courts have uniformly concluded that statutes which authorize collection of blood specimens to assist in law enforcement are not penal in nature. Rather, the blood sample is taken and analyzed for the sole purpose of establishing a data bank which will aid future law enforcement." (internal quotations omitted)); *see also Harley*, 315 F. App'x at 441-42 (rejecting claim that courts have "underestimated the magnitude of the affirmative disability" imposed by the DNA Act as amended). We agree that this fact does not establish the DNA Act as punitive.

Coccia next asserts, regarding the fourth *Kennedy* factor, that the DNA Act promotes the purposes of sentencing because it constitutes an "ongoing stigma and [] real threat of an additional conviction." In *Reynard*, the Court noted that "[l]egislative history suggests that Congress acknowledged that the DNA Act might help curb recidivism rates," but that "not every law with a deterrent effect is punitive." *Reynard*, 473 F.3d at 1020 (citing *United States v. Jackson*, 189 F.3d 820, 824 (9th Cir. 1999)). The Court in *Reynard* also held that the DNA Act did "not have a retribution component because it does not label the offender as more culpable than before, and is not geared toward making [the individual] understand and regret the severity of his crimes." *Id.* at 1020 (internal brackets and citations omitted). The Seventh Circuit held in *Hook*, 471 F.3d at 776, that neither a blood test nor retention of information is punitive, and further observed:

> In the event that [a defendant] had committed other crimes for which he might be convicted as a result of his DNA being collected, any punishment that he would receive would be in relation to a new conviction, not his original conviction, and thereby would not violate the Ex Post Facto Clause.

We agree.

Coccia finally claims in relation to the fifth *Kennedy* factor that failure to submit a DNA sample was not previously a crime. The court in *Reynard* held that the penalty in the DNA Act for non-compliance is punished as a separate offense, diminishing potential *ex post*

*facto* concerns because the purpose of the Clause is to protect against increased punishment for prior, not separate, offenses. *Reynard*, 473 F.3d at 1020-21; *see also Hook*, 471 F.3d at 776.

We also agree with the court in *Reynard* in finding that the other *Kennedy* factors, which Coccia does not dispute, favor finding that the DNA Act is not functionally punitive. *Reynard*, 473 F.3d at 1020-21. Under the totality of the factors, the DNA Act, as amended by the Justice Act, does not have an overriding punitive effect, and its application to Coccia does not violate the *Ex Post Facto* Clause. *See Harley,* 315 F. App'x at 441; *Reynard*, 473 F.3d at 1020-21; *Hook*, 471 F.3d at 776. Thus, the district court did not commit error, plain or otherwise.

We **AFFIRM** the district court.