NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0379n.06

Case No. 22-5749

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) ) | Sep 06, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| KENT BOOHER, | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) ) | O P I N I O N |

Before: WHITE, STRANCH, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Kent Booher was tried by a jury and convicted of five offenses stemming from his sexual relationship with a minor ("K.V.")[1] between 2012 and 2013 and his enticement of an undercover agent posing as a minor in 2019. He received a lengthy sentence for his criminal conduct and, in this appeal, challenges his conviction on Count Three of the First Superseding Indictment. Specifically, he asks us to reverse his conviction for sex trafficking of a child, arguing that the district court's instructions to the jury resulted in an ex post facto application of law. Because the district court did not plainly err in instructing the jury on this Count, we affirm.

---

[1] In accordance with the Federal Rules of Appellate Procedure, we refer to the victim, who was a minor at the time of these events, by her initials. *See* Fed. R. App. P. 25(a)(5).

**I.**

Between 2012 and 2013, Booher repeatedly engaged in sexual activity with K.V. when she was 14 to 15 years old. K.V. testified that Booher had intercourse with her at least twelve times. In exchange for sex, Booher gave K.V. money and other gifts. Throughout the course of their interactions, Booher contacted K.V. via Heywire, an anonymized internet-based text and calling service. After establishing a code word to confirm their identities with one another over Heywire, Booher requested that K.V. send him pictures of her genitals. Booher also bought K.V. numerous gifts for having sex with him. For instance, Booher purchased a cellphone for K.V. and paid for her plan, so he could communicate with her directly. Booher took K.V. out to eat, paid for tanning services, and bought her a "promise" ring, advising that she could be emancipated from her parents when she turned 16 and that they could get married. Booher also gifted K.V. an iPad for her to complete schoolwork. Finally, Booher took K.V. to a drug dealer's house and purchased pills from the dealer on her behalf at least three times.

In November 2019, a federal grand jury indicted Booher for three offenses stemming from his conduct with K.V. in 2012 and 2013: enticement of a minor in violation of 18 U.S.C. § 2422(b); sex trafficking of a child in violation of 18 U.S.C. § 1591(a)(1),(b)(2) and (c); and attempted production of child pornography in violation of 18 U.S.C. § 2251.[2] Booher's appeal centers on Count Three of the First Superseding Indictment (sex trafficking a child), which stated in pertinent part:

> [F]rom in or about November of 2012, to in or about June of 2013, within
> the Eastern District of Tennessee, [Booher], in and affecting interstate
> commerce, knowingly enticed, patronized, and solicited by any means a
> minor child whose identity is known to the Grand Jury and whose initials

---

[2] The indictment also included two additional charges, not relevant to this appeal, for Booher's 2019 conduct involving his pursuit of a sexual relationship with an undercover law enforcement agent who was posing as a 16-year-old girl.

are "K.V.," to engage in a commercial sex act, having had a reasonable opportunity to observe K.V. and knowing and in reckless disregard of the fact that K.V. had not attained the age of 18 years . . . [i]n violation of 18 U.S.C. § 1591(a)(1), (b)(2) and (c).

(R. 14, PageID 27). The version of § 1591(a)(1) that was in effect at the time of Booher's conduct with K.V. punished anyone who,

recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

18 U.S.C. § 1591(a)(1) (Supp. 2008). Notably, the terms "patronizes" and "solicits" were not added to the statute until 2015—well after Booher's conduct with K.V. in 2012 and 2013. *See* Pub. L. No. 114-22, § 108(a), 129 Stat. 227, 238–39 (2015). And the government concedes that it "mistakenly included the new statutory language in its indictment." (ECF 59, Appellee's Br. 12).

Booher proceeded to a jury trial. In charging the jury, the district court used this circuit's then-current pattern jury instruction for § 1591(a)(1) and its commentary to instruct the jury on the elements of Count Three. *See* Sixth Circuit Pattern Criminal Jury Instructions 16.12 (Sex Trafficking) (2019). The court's instruction matched the language of the superseding indictment. Relevant here, it informed the jurors that they must find that the government proved beyond a reasonable doubt "that the defendant knowingly enticed, patronized, and solicited K.V." (R. 125, PageID 2825). The court explained, however, that even though the indictment charged that Booher violated § 1591 by acts connected by the word "and," it would be sufficient to convict if the evidence established a violation by any one of the acts charged. In other words, the jury could find Booher guilty if it found that he enticed, patronized, or solicited K.V. *See United States v. McAuliffe*, 490 F.3d 526, 534 (6th Cir. 2007) ("It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively . . . . [T]he

government may prove and the trial judge may instruct in the disjunctive form.") (quoting *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983)). The court did not define the terms "enticed," "patronized," or "solicited." And Booher did not object to this instruction. The jury returned a verdict of guilty on all counts. The district court sentenced Booher to a term of life plus 120 months in prison, followed by 15 years of supervised release. Booher timely appealed, arguing that the district court's charge to the jury on Count Three, patterned after the 2015 version of § 1591(a)(1) rather than the version in effect when the offense was committed, was an ex post facto violation.

## II.

We "may reverse a judgment based on an improper jury instruction 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'" *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir. 1990)). But when a defendant does not object to the relevant jury instructions in the district court, we review for plain error. *See United States v. Morrison*, 594 F.3d 543, 546 (6th Cir. 2010) (citing Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b)). "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (alteration in original) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)).

## III.

"The Constitution prohibits both federal and state governments from enacting any 'ex post facto Law.'" *Peugh v. United States*, 569 U.S. 530, 538 (2013) (quoting U.S. Const. art. I, § 9, cl. 3; art. I, § 10, cl. 1). Four categories of laws are prohibited by the Ex Post Facto Clause:

> 1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390 (1798) (opinion of Chase, J.); *see also Carmell v. Texas*, 529 U.S. 513, 521–25 (2000) (discussing *Calder* and the common law understanding of the term "ex post facto").  In building on *Calder*, the Supreme Court "ha[s] not attempted to precisely delimit the scope of this Latin phrase, but [has] instead given it substance by an accretion of case law."  *Dobbert v. Florida*, 432 U.S. 282, 292 (1977).  In that regard, the Court has explained that the Ex Post Facto Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"  *Cal. Dep't of Corr. v. Morales*, 514. U.S. 499, 504–05 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).

Booher's challenge is based on the first category described in *Calder*, which prohibits laws "that make[] an action done before the passing of the law, and *which was innocent when done*, criminal; and punishes such action."  *Peugh*, 569 U.S. at 538 (emphasis added).  Booher maintains that his sex-trafficking-of-a-child conviction is an ex post facto violation because the court's inclusion of "patronizes" and "solicits" in its instructions allowed the jury to convict him based on conduct that was not criminal at the time of his offense.  Booher's failure to preserve this objection in the district court means we review his claim for plain error.  *See United States v. Coccia*, 598 F.3d 293, 296 (6th Cir. 2010) (citing *United States v. Olano*, 507 U.S. 725, 731–32 (1993)).

"The plain error standard requires (1) an error, (2) that was obvious or clear, (3) that affected the defendant's substantial rights, and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *United States v. Bauer*, 82 F.4th 522, 530 (6th Cir. 2023)

(citing *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). "Meeting all four prongs is difficult, 'as it should be.'" *United States v. Lawrence*, 735 F.3d 385, 401 (6th Cir. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). For an error to be clear or obvious, it must not be "subject to reasonable dispute." *Puckett*, 556 U.S. at 135. Further, "[a]n error affects a defendant's substantial rights when there is 'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." *Bauer*, 82 F.4th at 530 (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)).

*Clear or Obvious Error.* We need not spend much discussion on the error here. The terms "solicited" and "patronized" did not appear in § 1591(a)(1) during the time Booher committed the offense. So, while conformity with "the pattern jury instructions" could ordinarily serve "as one factor in determining whether any particular instruction is misleading or erroneous," *United States v. Frei*, 995 F.3d 561, 565 (6th Cir. 2021) (quoting *United States v. Damra*, 621 F.3d 474, 499–500 (6th Cir. 2010)), that factor is neutralized under the circumstances presented here; there was no Sixth Circuit pattern instruction for § 1591(a)(1) violations during the time of Booher's conduct. Nor was there any later-drafted instruction premised on the 2008 statutory language; the first pattern jury instruction crafted in this circuit to correlate with § 1591(a)(1) did not appear until after 2013. *See* Sixth Circuit Pattern Instruction 16.12 (Sex Trafficking) (2013). Indeed, the government concedes that the district court likely would not have included these later-added terms in the jury instructions had the government not included them in the indictment. And at oral argument, the government acknowledged that the district court's instruction was plainly incorrect on its face, as no reasonable dispute exists regarding whether those two terms appeared in the charging statute. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("[T]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the

conduct took place has timeless and universal appeal.'" (quoting *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring))). This leaves little room for doubt that the court erred.

The government, nevertheless, contests the clarity and obviousness of the error, arguing that the change in the statute was merely made to clarify what conduct is prohibited rather than to change or add to it. Essentially, it contends that "solicits" and "patronizes" are either subsumed within or are subsets of "entices" rather than new ways to violate the statute. And because adding these terms did not expand the universe of punishable conduct under the statute, says the government, it was neither clear nor obvious that including them in the court's jury instructions was erroneous. But we are not convinced that mere dictionary definitions provide the cover that the government claims. Deeply delving into the impact of the statutory change, as the government invites us to do, is more germane to our inquiry into the effect, if any, of the error on Booher's substantial rights rather than its obviousness. With respect to the latter, we conclude—as the government's concessions reinforce—that the error was clear.

*Substantial Rights.* Booher's claim runs aground at the third prong of our plain error review, as he cannot show that the inclusion of "solicits" and "patronizes" in the jury instructions affected his substantial rights. To demonstrate an effect on his substantial rights, Booher must establish "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Molina-Martinez*, 578 U.S. at 194). He has not done so.

At trial, there was abundant evidence that Booher enticed K.V. With no statutory definition for "entices," we look to the ordinary meaning of the word at the time of enactment. *See Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277 (2018). And for that task, dictionaries can be a

"good place to start." *United States v. Zabawa*, 719 F.3d 555, 559 (6th Cir. 2013) (citing *United States v. Lumbard*, 706 F.3d 716, 723 (6th Cir. 2013)). Merriam-Webster states that to "entice" means "to attract artfully or adroitly or by arousing hope or desire." *Entice*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (10th ed. 2000, 11th ed. 2014). And one legal dictionary defines "entice" as meaning to "lure or induce; esp., to wrongfully solicit (a person) to do something." *Entice*, BLACK'S LAW DICTIONARY (9th ed. 2009, 10th ed. 2014).[3] Booher's tactics readily met these definitions. For instance, in addition to supplying K.V. with money and gifts in exchange for sex, Booher also gave K.V. a "promise" ring and suggested that they could go to Virginia or South Carolina to get married once she turned 16 and became emancipated from her parents because the laws there were different than in Tennessee. He also told K.V. that he loved her and over time, K.V. came to believe she was in a relationship with Booher despite the fact that he was married with children of his own. And Booher fed K.V.'s burgeoning drug habit by purchasing pills for her in exchange for sex acts. Both individually and collectively, the described actions demonstrated Booher's efforts to lure, induce and wrongfully solicit[4] a minor to engage in sex acts with him. They thus provided extensive evidence of Booher's enticement of K.V. Because of this, Booher has not shown that there is a reasonable probability that he would have faced a different outcome if the court had not included "solicits" and "patronizes" in its instructions. In short, he has not demonstrated that his substantial rights were affected. *See United States v. Warner*, 843 F. App'x 740, 747 (6th Cir. 2021) (holding that mistaken jury instructions provided no grounds for reversal because substantial evidence supported defendant's convictions); *United*

---

[3] The definition of "entice" did not change between 2012 and 2015 when Booher's conduct initially occurred and when § 1591 was amended, nor has it since.

[4] *See Solicit*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/solicit (last visited August 12, 2024) ("to entice or lure especially into evil").

*States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013) (holding that a defendant was unable to show effect on substantial rights where evidence "more than established" that defendant conspired with the intent to defraud); *United States v. Hadley*, 431 F.3d 484, 507 (6th Cir. 2005) (holding similarly in the context of felon-in-possession conviction).

Resisting this conclusion, Booher directs us to *United States v. Jones*, 459 F. App'x 616 (9th Cir. 2011), where the government conceded an ex post facto violation when it charged the defendant with sexual exploitation of a child and sex trafficking of a child in violation of 18 U.S.C. §§ 2251(a), 1591. The Ninth Circuit reversed Jones's sentence in that case "because the jury was instructed on the statutory requirements [of § 1591] as that statute existed at the time of trial, rather than those that existed when [Jones] committed his offense." *Jones*, 459 F. App'x at 617. But *Jones* is both non-binding and distinguishable from Booher's case. To begin, based on the government's concession, the *Jones* court reversed and remanded without conducting any substantive analysis. Nonetheless, on closer view, the reason for the government's concession there comes into focus. The 2008 amendment at issue in *Jones* altered a foundational component of § 1591: its mens rea requirement. The original statute required knowledge "that the person has not attained the age of 18 years," while the 2008 amendment allowed a jury to convict if the government proved reckless disregard for the victim's age. *Compare* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, § 112(a), 114 Stat. 1464, 1487, *with* William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110-457, § 222(b), 122 Stat. 5044, 5069. Therefore, the trial court's instruction in *Jones* on § 1591's post-2008 amendment mens rea requirement, rather than the scienter in place when Jones committed

the offense, posed a substantial risk that the jury may have convicted Jones for conduct that was not criminal when he committed it. That is not the case here.[5]

Booher's enticement of K.V. was illegal prior to the statute's amendment. And as we have stated, there was overwhelming evidence presented at trial that Booher enticed K.V. Because our inquiry focuses on whether there is "a reasonable probability that the error affected the outcome of the trial" and not whether "there exists any possibility, *no matter how unlikely*, that the jury could have convicted based exclusively on [non-criminal] pre-enactment conduct," *Marcus*, 560 U.S. at 262–63 (citation and internal quotation marks omitted), we are unconvinced that the addition of the words "solicits" and "patronizes" affected Booher's substantial rights. Indeed, Booher points to no evidence in the record to suggest that the result of his trial would have been different had "solicits" and "patronizes" not been included in the jury's instructions or that his conduct did not constitute enticement. Accordingly, Booher's arguments fail on plain error review.

---

[5] While this circuit has not addressed the issue and we need not resolve it here, there is convincing authority that "soliciting" and "patronizing" a minor for commercial sex was illegal both before and after the 2015 amendment based on Congress's explanation that it added those words in 2015 merely to "clarify the range of conduct punished as sex trafficking." Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, § 108(c), 129 Stat. 227, 239 (codified at 18 U.S.C. § 1591). According to Congress, the amendment simply spelled out what was already encompassed in the word "obtains"—a word that has been a part of the statutory language since inception. *See* § 109(2), 129 Stat. at 239. That is, while "obtains" "ha[d] been interpreted, prior to the date of enactment of [the] Act," as encompassing individuals "who purchase illicit sexual acts from trafficking victims," some courts had held otherwise. *Id.* In *United States v. Jungers*, 702 F.3d 1066, 1070 (8th Cir. 2013), the Eighth Circuit reversed a district court's decision to acquit sex trafficking buyers in two separate cases, holding that § 1591 applied to persons who purchase illicit sexual acts from trafficking victims. *Id.* at 1068–69, 1076. Now aware of the earlier misinterpretation of "obtains," Congress amended § 1591 to "[make] absolutely clear for judges, juries, prosecutors, and law enforcement officials that criminals who purchase sexual acts from human trafficking victims may be arrested, prosecuted, and convicted as sex trafficking offenders." Justice for Victims of Trafficking Act § 109(4), 129 Stat. at 239. Against this backdrop, Booher's argument that soliciting and patronizing conduct was not criminal at the time of his offense is questionable. This history and context suggest that it was illegal to purchase sexual acts from human trafficking victims both before and after the 2015 amendment to § 1591. *See id.* And the 2015 amendment did not attach "new legal consequences to events completed before its [re]enactment." *Landgraf*, 511 U.S. at 270.

**IV.**

For the reasons discussed, we affirm.