STATE OF CONNECTICUT *v.* TYRONESHA MILES
(AC 32421)

DiPentima, C. J., and Gruendel and Flynn, Js.

<hr>

Argued October 18—officially released December 20, 2011

*Elizabeth M. Inkster*, senior assistant public defender, with whom, on the brief, was *Silvia Knox-Delamar*, certified legal intern, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Margaret E. Kelley*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Tyronesha Miles, appeals from the judgment of conviction, rendered after a trial by jury, of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54 (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1) arising out of the stabbing of Devore Anderson with a knife two times in the abdomen and three times in the back. The defendant claims that (1) the trial court improperly excluded evidence that Anderson had been stabbed five years earlier in an unrelated incident by

an unidentified assailant, (2) the evidence was insufficient to support the conviction because the state failed to use forensic evidence to prove the identity of the perpetrator and (3) the evidence was insufficient to support the conviction because the state failed to prove that the defendant was the perpetrator. Because we conclude that the defendant never established any direct connection between the stabbing for which she was charged and the prior incident to establish its relevancy, and the trial evidence was sufficient, if believed, to establish the identity of the defendant as the person who committed the crimes charged, we affirm the judgment of conviction.

The following facts that the jury could have reasonably found inform our review. This case arises out of an August 7, 2009 assault that occurred in Bridgeport's P.T. Barnum housing project. Anderson, however, also had been stabbed years earlier. No one identified that prior assailant as a person who fought with or stabbed Anderson in 2009.

In the late evening on August 7, 2009, two fights occurred between Anderson and the defendant. Anderson had known the defendant from the neighborhood prior to the first fight.

It is clear that the first fight commenced over remarks attributed to Anderson made earlier about Tameka King. Anderson admitted striking the defendant with a belt. Others were involved in this first fight, including Anderson's sister, Taiwan Porter, who attempted to break it up. Porter got a good look at the defendant during the first fight. Ultimately, an unidentified man came upon the scene and broke up the fight.

The second incident occurred later in the evening. There was evidence before the jury that Anderson had remained on the scene of the first fight for approximately twenty minutes after it had ended, looking for

lost money. She then left the area where the first fight had occurred and headed on to Shell Street. Anderson saw a person walking toward her, whose head was obscured by a hooded jacket, whom she first thought was a male. Streetlights were on but were dim. However, as the hooded person came closer to her she recognized the defendant, a female, by her gait and hair. She saw the defendant holding a knife. The defendant then said to Anderson: "[Y]ou wanna use weapons. I'll kill you, bitch." The defendant then stabbed Anderson twice in the abdomen and three times in the back, causing severe bleeding from the wounds that required hospitalization and surgery. Anderson saw the defendant's girlfriend, Tameka King, standing on the corner of Shell Street and Ocean Terrace right before the defendant stabbed Anderson. When Anderson's sister, Taiwan Porter, came to her defense, Anderson identified her assailant as "Ty."[1] Officer Milton Johnson also testified that Anderson exclaimed, "Ty did it," in response to his questioning of her at the crime scene.

I

The defendant first claims that the trial court improperly excluded evidence that she proffered that Anderson had been stabbed by another person several years earlier and that the exclusion of this evidence "violated [her] right to due process and to present a defense, as guaranteed by the fifth, sixth and fourteenth amendments to the United States constitution and by article

[1] We note that three figures in the evidence have similar first names. All are referred to in the record by the nickname "Ty." The defendant is named Tyronesha, and Anderson's sister is named Taiwan. The defendant's girlfriend is Tameka King. It is clear from the evidentiary context that Anderson was not accusing her sister and that Ty was a nickname, used by Anderson, for Tyronesha Miles, the defendant. It is also clear that Anderson was not referring to Tameka King as her assailant by her use of the nickname "Ty" because Anderson's testimony placed King away from the specific stabbing fight on a nearby corner immediately prior to the stabbing. Finally, Anderson did not know King's name prior to the stabbing, although she knew her from the neighborhood.

first, § 8, of the Connecticut constitution . . . ." We are not persuaded.

At the outset we note that the defendant did not alert the trial court to claims under the state constitution. We do not review the state constitutional claims because the defendant does not make the separate analysis of the state constitutional claims that our Supreme Court required in *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992). See also *State* v. *Robertson*, 254 Conn. 739, 743 n.5, 760 A.2d 82 (2000).

Our review standard as to this type of third party culpability claim requires that we analyze the proffered evidence to determine whether it is relevant to the issue of whether someone other than the defendant committed the crimes with which the defendant was charged. *State* v. *West*, 274 Conn. 605, 625, 877 A.2d 787, cert. denied, 546 U.S. 1049, 126 S. Ct. 775, 163 L. Ed. 2d 601 (2005). The defendant never made any claim of violation of federal constitutional rights before the trial judge, which she now asserts for the first time on appeal. Her claim at trial was evidentiary. She now requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Her *Golding* claim fails because she has not shown that a constitutional violation clearly exists, as *Golding* requires. This is so because she has failed to show that evidence of third party culpability was relevant or exculpatory. Although Connecticut consistently has recognized that a defendant has a right to introduce such evidence, "[t]he defendant must, [in such cases], present evidence that *directly connects* a third party to the crime . . . ." (Emphasis added; internal quotation marks omitted.) *State* v. *West*, supra, 625. Although the defendant frames the appellate issue as one of a constitutional violation and evidentiary error, our ultimate conclusion turns on evidentiary grounds. Our Supreme Court has held that a defendant's constitutional right to present a defense "does not require the trial court

to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Citations omitted.) *State* v. *Cerreta,* 260 Conn. 251, 261, 796 A.2d 1176 (2002); *State* v. *Eagles,* 74 Conn. App. 332, 335, 812 A.2d 124 (2002), cert. denied, 262 Conn. 953, 818 A.2d 781 (2003).

"Relevant evidence is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *State* v. *West,* supra, 274 Conn. 625; Conn. Code Evid. § 4-1.

In an offer of proof at trial, the defendant's counsel sought to elicit testimony that five years previously Anderson had been stabbed. However, the state objected on the ground of relevance. After eliciting that testimony outside the jury's presence, defense counsel represented to the court that there was "another individual who was present at the time, who stabbed this victim." Counsel never offered to prove that this third party was the same party who committed the earlier stabbing assault. The defendant sought, through evidence of a stabbing assault five years earlier, to make out a defense of third party culpability. The defense counsel then sought to amplify the offer of the disputed evidence. He told the court: "Normally, people don't walk around getting stabbed, so, the fact that there's going to be testimony that it was somebody else and the fact that she's been stabbed prior, lends credence, I believe, of probative value to the anticipated testimony, and it backs up the anticipated testimony to some degree." The court excluded the evidence on the ground

that it was irrelevant. The court ruled that the fact that someone else had stabbed Anderson several years earlier did not have probative value in the present case. However, the court advised counsel that if he later thought that the record had changed, he could ask the court to reconsider its ruling.

Accordingly, in explaining the requirement that the proffered evidence establish a direct connection to a third party, rather than raise merely a bare suspicion regarding a third party, our Supreme Court has stated: "Such evidence is relevant, exculpatory evidence, rather than merely tenuous evidence of third party culpability [introduced by a defendant] in an attempt to divert from himself the evidence of guilt." (Internal quotation marks omitted.) *State* v. *Arroyo*, 284 Conn. 597, 609, 935 A.2d 975 (2007); *State* v. *Smith*, 280 Conn. 285, 304, 907 A.2d 73 (2006). That relevancy standard requires that there be a direct connection to the third party alleged to have committed the crime.

In the defendant's proffer to the trial court, there was a complete absence of any evidence that *directly connected* a third party to the crimes for which the defendant had been charged. See *State* v. *West*, supra, 274 Conn. 625. There was no evidence offered outside the jury's presence in the offer of proof about the physical appearance and features of the person who had stabbed Anderson years earlier. There was no evidence proffered as to the name or identity of the person who had stabbed Anderson several years earlier, nor was there any evidence proffered that this unnamed individual was at the scene on the night of August 7, 2009, when Anderson again was stabbed. Additionally, "[e]vidence that a third party who is alleged to be responsible looked like the defendant is highly relevant." *State* v. *Eagles*, supra, 74 Conn. App. 339; see also *State* v. *Echols*, 203 Conn. 385, 393–94, 524 A.2d 1143 (1987). Nothing in the defendant's offer of proof purported to show that

Anderson's assailant of five years earlier bore any resemblance to the defendant. There was also no proffer that those who identified the defendant as the perpetrator might have confused the identity of the defendant with the unnamed assailant of five years earlier because of similarities in dress, height, or personal appearance. Nor was there other evidence providing any direct connection between whomever had stabbed Anderson five years earlier and the stabbing occurring on August 7, 2009 for which the defendant had been charged. With the complete lack of any evidence that *directly connected* the third party to the crimes for which the defendant had been charged, we conclude that the court properly excluded the evidence.

Alternatively, the defendant claims that the evidence of the stabbing five years earlier was admissible under the holding of *State* v. *Cerreta*, supra, 260 Conn. 251. In *Cerreta*, our Supreme Court distinguished between evidence that might be admissible to show third party culpability and evidence that was admissible as exculpatory. The court in *Cerreta* ruled that evidence of hair and fingerprints recovered by the police, which testimony showed were not those of the defendant, while not admissible as third party culpability evidence, was, nonetheless, wrongfully excluded because it was exculpatory. Id., 262. In the present case, however, the prior stabbing evidence was not exculpatory. It did not make more likely a finding that because Anderson had been stabbed five years earlier, the defendant did not stab Anderson on August 7, 2009. See *State* v. *West*, supra, 274 Conn. 624–25. Accordingly, the facts in *Cerreta* readily are distinguishable.

We, therefore, conclude that the evidence was properly excluded by the court on the ground of relevancy. The court did not abuse its discretion, nor does it appear that any injustice was done.

## II

We next address the defendant's claim that there was insufficient evidence as to the identity of the perpetrator because the state failed to support the identification by forensic evidence, thereby failing to prove this essential element of the crimes. We reject this claim.

The defendant argues that there was no DNA (deoxyribonucleic acid) testing of blood from the scene, despite the fact that during the first fight with Anderson, she bled after having been hit by Anderson's belt buckle. She contends that the police never tested Anderson's blood-soaked shirt, which they had seized as evidence. We conclude that such forensic evidence was not necessary to establish the identity of the perpetrator in this case.

It is clear that evidence may suffice although it comes from only one witness. *State* v. *Caracoglia*, 95 Conn. App. 95, 128, 895 A.2d 810, cert. denied, 278 Conn. 922, 901 A.2d 1222 (2006). In the present case, however, there were two witnesses. Both Anderson and her sister, Porter, testified that it was the defendant who stabbed Anderson.[2] Where identification testimony could be believed by jurors, there is no rule of law that requires that it be buttressed by forensic DNA evidence to suffice to prove that it was the defendant who committed the criminal acts.

## III

We finally address the defendant's claim that the evidence was insufficient to establish that the defendant was the person who stabbed Anderson. We disagree.

---

[2] Porter, Anderson's sister, testified that she witnessed from her front porch the defendant coming back to fight Anderson. Porter concluded that the defendant was wielding a knife due to "the shining and gleaming . . . from the reflection of the [streetlights]." She also heard Anderson exclaim, "she's tryin' to stab me," and, "she stabbed me."

Although the defendant did not preserve her claim at trial, all sufficiency of evidence claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime on insufficient proof. *State* v. *Laws*, 37 Conn. App. 276, 287, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995); see *Jackson* v. *Virginia*, 443 U.S. 307, 316–19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

It is always the state's burden to show that it was the defendant, and not some other person, who committed the crime or crimes charged. *State* v. *Smith*, supra, 280 Conn. 302. In her brief, the defendant focuses on the element of identity, and we, therefore, direct our review to that issue. "In accordance with well established principles, appellate analysis of a claim of insufficiency of the evidence requires us to undertake a twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008); see also *State* v. *Hayward*, 116 Conn. App. 511, 515, 976 A.2d 791, cert. denied, 293 Conn. 934, 981 A.2d 1077 (2009).

A review of the defendant's argument leads us to conclude that her challenges go to the credibility of the state's principal identification witnesses rather than to the sufficiency of the evidence. See *State* v. *Hall*, 120 Conn. App. 191, 198, 991 A.2d 598, cert. denied, 297 Conn. 903, 994 A.2d 1288 (2010).[3] A determination

[3] We recognize that there are cases where misidentification has occurred and injustice has resulted. See *State* v. *Tillman*, 220 Conn. 487, 500, 600 A.2d 738 (1991) (conviction affirmed holding defendant could not prevail on challenge to trial court's failure to charge on identification testimony

regarding the credibility of witnesses, however, is a function of the jury. "In assessing the evidence at trial, it is the jury's role as the sole trier of the facts to weigh the conflicting evidence and to determine the credibility of witnesses. . . . It is the right and duty of the jury to determine whether to accept or to reject the testimony of a witness . . . and what weight, if any, to lend to the testimony of a witness and the evidence presented at trial." (Internal quotation marks omitted.) Id. In this case, the identification evidence, if believed, was sufficient to establish that the defendant, and not some other person, committed the crimes.

Both identification witnesses knew what the defendant looked like before the knife assault, and they had no difficulty in identifying the defendant. Porter gave a general description of her sister's assailant to Detective John Tenn at the crime scene. She revealed that the assailant was a black woman with a husky build and dreadlocks. Porter also identified the defendant as her

credibility that the jury "may consider . . . whether the witness was physically impaired or under stress when observing the perpetrator" [internal quotation marks omitted]), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992); see Special Acts 2007, No. 07-5, § 1, "An Act Compensating James C. Tillman for his Wrongful Conviction and Incarceration" (compensating Tillman $5 million for wrongful arrest, prosecution, conviction and incarceration on charges of kidnapping and sexual assault which charges were dismissed on July 11, 2006). Conviction of the innocent is unjust because it punishes the blameless while the guilty remain free. That is not this case, however. After Anderson and Porter had identified the defendant as Anderson's assailant, Anderson and Porter were later shown photographic arrays at different times after the stabbing. After foundations were laid for admission of the photographic array, the state offered the full array shown to Anderson, which was admitted without objection. The state offered only one photograph for the identification made by Porter. The state had offered evidence, that, with respect to Porter's identification, details of her description of the color, age and height of the person supplied by Porter were entered into the police data system along with the nickname, "Ty." That system generated eight photos for viewing that matched that description, and fifty-nine additional photos would follow if no identification were made of the first eight. Only the photograph identified by Porter from the electronic array came into evidence, and that, too, was admitted without objection.

sister's assailant in image number seven of the first screen of sixty-seven potential candidates she could have viewed in the electronic photographic array. See footnote 3 of this opinion. The stabbing was temporally close in time to the first fight between Anderson and the defendant, which had occurred approximately twenty minutes earlier. The defendant's dreadlocks and particular way of walking confirmed the identification. In short, all of this evidence sufficed to identify the defendant as the person who had stabbed Anderson five times on the night of August 7, 2009.

The defendant attacks the testimony of both Anderson and Porter identifying the defendant as the person who committed the stabbing. She argues that the evidentiary record indicates that both Anderson and Porter at first thought the assailant was a male. The following inquiry on direct examination of Anderson explains how that happened:

"Q. Can you tell the jury what happened when you came out onto Shell Street as you [were] walking home that night?

"A. When I came out on Shell Street, I seen somebody walkin' towards me. At first I wasn't sure who it was because they—she had a gray and black hoodie on, so I thought it was a man walkin' down towards Shell Street. So, I go—I'm walkin' towards my [mother's] house and their house, to tell them about the story and everything, about the situation—

\* \* \*

"Q. Okay, just want to make sure, and where were you? Can you tell us, Ms. Anderson, where were you when you first saw a person approaching you that you believed was a man?

"A. As soon as I hit the sidewalk, like I said, I'm crossin' the field, as soon as I hit the sidewalk, I seen somebody.

"Q. Which direction was that person walking from?

"A. My direction, comin' towards me.

"Q. So, the opposite direction.

"A. Exactly.

"Q. How was the person dressed?

"A. In a black and striped hoodie, like stripes, black on one side, gray, black, and gray stripe hoodie.

"Q. And what happened as that person and you approached, what happened?

"A. I recognized that it was Tyronesha Miles.

"Q. Now, how—can you explain to the jury, how did you recognize that it was Tyronesha Miles?

"A. By her hair.

"Q. Okay, anything else about her appearance.

"A. Manner of walk, after a while. At first, like I said, I thought it was a man at first 'cause she changed her clothes, then as soon as I seen her dreads and everything and her coming towards me, I knew who it was."

It is clear from a reading of the testimony that Anderson's version of events was that the defendant had changed her clothes and put on a hooded jacket, which caused the defendant to be mistaken for a male initially, but who then was recognized as the female defendant when she approached further. Anderson explained that the defendant was recognizable by her dreadlocked hair and the manner in which she walked. Clearly, the jury was free to credit this testimony.

Additionally, we note that Anderson quickly identified the defendant as her attacker from a photographic array prepared by the police. Further, Porter explained that when she heard Anderson scream that she was

being stabbed, she ran down the stairs from her home, and, as she got closer to the crime scene, she recognized the defendant as the perpetrator. Porter explained that when she got closer to the defendant, she recognized her from the first fight but that the defendant had changed her clothes and put on a hooded sweatshirt. Again, the jury was free to credit the testimony of both Anderson and Porter and their explanation as to why they each first thought that the defendant was a man when they saw her with a hood obscuring her face.

Although the defendant points out that there was contradictory testimony from King, the jury was not required to credit this testimony. King, who described herself as being in a "relationship" with the defendant, testified that a hooded man had passed her and said, "what's going on, sexy." King further stated that sometime thereafter she saw that man approach Anderson, strike her repeatedly, and run off after Anderson collapsed to the ground. Conflicting testimony and the credibility of witnesses is a matter left to the province of the jury. See *State* v. *Hall*, supra, 120 Conn. App. 198. The defendant's attempt to have this court make credibility determinations is unavailing.

The judgment is affirmed.

In this opinion the other judges concurred.