STATE OF CONNECTICUT *v.* MARK BANKS
(AC 33326)
(AC 33387)

Lavine, Robinson and Bear, Js.

Argued February 15—officially released June 25, 2013

*Lauren Weisfeld*, senior assistant public defender, for the appellant (defendant).

*Michael A. Gailor*, executive assistant state's attorney, with whom, on the brief, was *Gail P. Hardy*, state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The principal questions raised in these consolidated appeals are whether the state may obtain a DNA sample from a felon in the custody of the commissioner of correction (commissioner) who was convicted of crimes prior to the enactment of General Statutes (Rev. to 2003) § 54-102g and whether, prior to the passage of Public Acts 2011, No. 11-144, § 1 (P.A. 11-144), which amended § 54-102g, it was permissible for the trial court to grant the state permission to use reasonable physical force to obtain a DNA sample. We answer both questions in the affirmative and affirm the judgments of the trial court.

In AC 33326, the defendant, Mark Banks, appeals from the judgment of the trial court, claiming that the court lacked jurisdiction to grant the state's motion to use reasonable physical force to obtain a DNA sample from him.[1] The defendant claims that § 54-102g, as

---

[1] The state's motion to use reasonable force to obtain a DNA sample from the defendant was filed in the defendant's underlying criminal cases in which the defendant had commenced serving his sentences. After the court, *Mullarkey, J.*, granted the motion there was nothing further for the court to do and the court's order did not affect the defendant's sentences. We

applied to him, violated his right to due process of law and the ex post facto clause of the federal constitution.[2] In AC 33387, the defendant appeals from his conviction, rendered after a trial to the court, of refusing to provide a blood or other biological sample for DNA analysis (DNA sample) in violation of General Statutes (Rev. to 2003) § 54-102g, as amended by Public Acts 2004, No. 04-188, § 1 (P.A. 04-188). He claims that, as applied to him, the statute violated his right to due process of law and the ex post facto clause. We conclude that § 54-102g is regulatory in nature, does not violate the ex post facto clause and that the state may use reasonable force to obtain a DNA sample from the defendant. We thus affirm the judgments of the trial courts.

The following facts and procedural history are relevant to the defendant's appeals. The defendant was indicted in two files for robberies he committed in 1995; the cases were consolidated for trial. *State* v. *Banks*, 59 Conn. App. 112, 114, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000). A jury found the defendant guilty of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), four counts of kidnapping in the first degree in violation of General Statutes § 53a-92 and two counts of criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (robbery related convictions). Id., 113. On December 19, 1997, the court, *Spada, J.*, sentenced the defendant to fifteen years incarceration, consecutive to the sentence the defendant was

therefore conclude that the appeal has been taken from a final judgment. Compare *State* v. *Grotton*, 180 Conn. 290, 429 A.2d 871 (1980) (*pretrial discovery order* for blood, urine or saliva testing to determine whether defendant was drug-dependent was not final judgment).

[2] The constitution of the United States, article first, § 10, provides in relevant part: "No State shall . . . pass any Bill of Attainder, ex post facto Law . . . ." The defendant's federal due process claim is founded on the ex post facto clause. The defendant did not provide a due process claim analysis under our state constitution.

then serving. The defendant has been in the custody of the commissioner since that time.

On March 17, 2010, the commissioner directed the defendant to submit to the taking of a DNA sample by department of correction personnel. The defendant refused, believing that he was not required to provide a DNA sample.[3] On May 14, 2010, the state charged the defendant with failure to provide a DNA sample pursuant to § 54-102g (g).[4] On May 19, 2010, the state filed a motion in the defendant's robbery related cases asking the court to authorize the use of reasonable physical force to obtain a DNA sample from the defendant. In its motion, the state represented that the defendant was serving sentences for the robbery related convictions, § 54-102g is regulatory in nature, the defendant is not exempt from the requirement to provide a DNA sample, and, therefore, the court had jurisdiction to consider the motion.

On August 12, 2010, the defendant, through counsel, opposed the state's motion to use reasonable physical force. The defendant argued that § 54-102g was a criminal statute that must be construed strictly. He further

---

[3] At the time, George Camp, a department employee asked the defendant to provide a DNA sample for inclusion in the DNA data bank. Camp explained the department policy regarding the taking of DNA samples and gave the defendant an opportunity to read a form that explained that the defendant was required to provide a sample and the consequences if he refused to provide a DNA sample. The defendant read the form and refused to provide a sample. He signed the department refusal form indicating that he understood the advisement and that he refused to provide a DNA sample.

[4] At the time the defendant was charged, General Statutes (Rev. to 2009) § 54-102g provided in relevant part: "(a) . . . If any person required to submit to the taking of a blood or other biological sample pursuant to this subsection refuses to do so, the Commissioner of Correction or the commissioner's designee shall notify the Department of Public Safety within thirty days of such refusal for the initiation of criminal proceedings against such person. . . .

"(g) Any person who refuses to submit to the taking of a blood or other biological sample pursuant to this section shall be guilty of a Class A misdemeanor."

contended that the legislature intended § 54-102g to create a comprehensive database to store genetic material for comparative purposes in criminal investigations and that the clear and unambiguous text of § 54-102g did not provide for the taking of a DNA sample by reasonable force. The defendant further noted that the legislature had amended § 54-102g several times since its enactment and specifically noted that a conviction for failing to provide a DNA sample had been changed from a class A misdemeanor to a class D felony. See General Statutes (Rev. to 2009) § 54-102g (g), as amended by Public Acts 2010, No. 10-102, § 2. The defendant argued that, in amending the statute, the legislature did not authorize the use of reasonable force to obtain a DNA sample, which the court should construe as a conscious decision on the part of the legislature not to permit the use of such force.[5] If the court granted the state's motion to use reasonable physical force, the defendant contended, the court would blur the lines of the separation of powers as between the legislature and our courts.

On October 1, 2010, the defendant, then representing himself, filed a supplemental memorandum of law in opposition to the state's motion to use reasonable physical force, arguing that the law now requiring a felon in the custody of the commissioner to provide a DNA sample could not apply to him. He further argued that, at the time of his robbery related convictions, he was not subject to DNA data collection under § 54-102g and subsequent amendments to the statute did not provide for retroactive application. According to the defendant,

---

[5] But see General Statutes (Rev. to 2011) § 54-102g, as amended by P.A. 11-144, § 1 (i), which provides: "If any person required to submit to the taking of a blood or other biological sample pursuant to any provision of this section is in the custody of the Commissioner of Correction and refuses to submit to the taking of such sample, the commissioner or the commissioner's designee may use reasonable force to obtain a blood or other biological sample from such person."

the 2003 amendment, therefore, subjects him to additional criminal proceedings in violation of the ex post facto clause.

The parties appeared before the court, *Mullarkey, J.*, to argue the state's motion to use reasonable physical force. The court granted the motion pursuant to a memorandum of decision issued on February 8, 2011.[6] The court found that § 54-102g applied to the defendant because he was a felon in the custody of the commissioner. The court concluded that it had jurisdiction to consider the motion to use reasonable physical force because granting the motion would have no effect on the sentences the defendant was serving for the robbery related convictions. Moreover, the court found that § 54-102g was regulatory in nature, and that, by implication, the state had the authority to use reasonable force to obtain a DNA sample from a felon who refused to provide one. The court concluded that prohibiting the state from using reasonable force would permit a felon to avoid his or her obligation to provide a DNA sample and thus frustrate the legislature's goal of creating a DNA data bank to assist in future criminal investigations. Although the court granted the motion to use reasonable physical force, it stayed the order until after the appeal period expired. The defendant's appeal from the judgment rendered when Judge Mullarkey granted the motion to use reasonable physical force is AC 33326.

By way of a substitute information dated February 18, 2011, the state charged the defendant with refusing to submit to the taking of a DNA sample as required

---

[6] The state also filed a similar motion with respect to Roosevelt Drakes, who opposed the motion on grounds similar to those raised by the defendant. Judge Mullarkey heard the motions as to the defendant and Drakes together and issued a consolidated ruling in a memorandum of decision. See the opinion released today in the companion case of *State* v. *Drakes*, 143 Conn. App. 510, 70 A.3d 1104 (2013).

by General Statutes (Rev. to 2011) § 54-102g (g). Following a trial to the court, *Carbonneau, J.,* the defendant was found guilty and sentenced to one year of incarceration consecutive to the sentences he was then serving. The defendant's appeal from the judgment of conviction is AC 33387.

In each of the appeals, the defendant raised claims that are questions of law to which an appellate court gives plenary review. See *State* v. *Alexander,* 269 Conn. 107, 112, 847 A.2d 970 (2004) (court's subject matter jurisdiction question of law); *State* v. *Parra,* 251 Conn. 617, 622, 741 A.2d 902 (1999) (statutory construction question of law); *State* v. *Marsala,* 93 Conn. App. 582, 587, 889 A.2d 943 (constitutional issue question of law), cert. denied, 278 Conn. 902, 896 A.2d 105 (2006).

I

AC 33326

In this appeal, the defendant claims that Judge Mullarkey erred when he granted the state's motion to use reasonable physical force to obtain a DNA sample from him because (1) the court lacked subject matter jurisdiction to consider the state's motion, (2) as applied to him, § 54-102g violates the ex post facto clause, (3) the legislature did not give P.A. 11-144, § 1, which amendment added the "reasonable force" language, retroactive effect, and (4) the statute does not provide for the use of force. The defendant's claims fail because § 54-102g is a regulatory statute, its application to the defendant does not affect his robbery related sentences, his refusal to submit to the taking of a DNA sample is conduct that occurred after he began to serve those sentences and the use of reasonable physical force is implicit in the statute, given that the goal of the legislation is to establish a DNA data bank to assist future criminal investigations.

We begin with a brief history of the legislature's goal to establish a DNA data bank. In 1994, the General Assembly enacted legislation requiring persons convicted of certain enumerated sexual offenses to provide a DNA sample. See Public Acts 1994, No. 94-246, codified in General Statutes (Rev. to 1995) § 54-102g et seq.[7] The statute has been amended several times since then. In 2003, the statute again was amended to apply to all felons in the custody of the commissioner. See Public Acts 2003, No. 03-242, § 1 (P.A. 03-242).[8] It is the 2003 amendment that is at issue in these appeals.[9]

A

The defendant claims that the court improperly concluded that it had subject matter jurisdiction over the state's motion to use reasonable physical force. We do not agree.

Our Supreme Court "has held that the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action *affecting* a defendant's sentence

[7] General Statutes (Rev. to 1995) § 54-102g (a) provides in relevant part: "Any person who (1) is convicted of a violation of section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b on or after October 1, 1994, and is sentenced to the custody of the commissioner of correction or (2) has been convicted of a violation of section 53a-70, 53a-70a, 53a-70b, 53a-71, 53a-72a or 53a-72b and on October 1, 1994, is in the custody of the commissioner of correction shall, prior to release from such custody, have a sample of his blood taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics . . . ."

[8] General Statutes (Rev. to 2003) § 54-102g (a), as amended by P.A. 03-242, § 1 (a), provides in relevant part: "Any person who is convicted of a criminal offense against a victim who is a minor, a nonviolent sexual offense or a sexually violent offense . . . or a *felony*, and is sentenced to the custody of the Commissioner of Correction shall, prior to release from custody and at such time as the commissioner may specify, submit to the taking of a blood or other biological sample for DNA . . . analysis to determine identification characteristics specific to the person." (Emphasis added.)

[9] In this opinion we refer to § 54-102g, as amended by P.A. 03-242, § 1, unless otherwise noted.

unless it expressly has been authorized to act." (Emphasis added.) *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 739, 930 A.2d 644 (2007).

In its memorandum of decision, the court determined that the defendant's subject matter jurisdiction claim is controlled by *State* v. *Waterman*, 264 Conn. 484, 492, 825 A.2d 63 (2003). *Waterman* concerns Connecticut's mandatory sex offender registration statute, commonly known as Megan's Law.[10] Id., 485–86. Subsequent to the sentencing of the defendant in that case, the trial court in *Waterman* found that "the victims of the offense for which the defendant had been convicted were minors and advised the defendant of the mandatory requirement, pursuant to [General Statutes] §§ 54-250 (2) and 54-251, that he register as a sex offender . . . ." Id., 486–87. The defendant appealed, claiming that the court lacked jurisdiction to make the factual finding because he had begun serving his sentence. Id., 487. Our Supreme Court concluded that the trial court properly had exercised its jurisdiction, as the registration requirement under § 54-251[11] is not a part of the criminal judgment of conviction but is a separate regulatory

---

[10] See General Statutes § 54-250 et seq.

[11] General Statutes (Rev. to 1999) § 54-251 (a), as amended by Public Acts 1999, No. 99-183, § 2, provides in relevant part: "Any person who has been convicted . . . of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release, and whether or not such person's place of residence is in this state, register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety . . . and shall maintain such registration for ten years . . . ." See *State* v. *Waterman*, supra, 264 Conn. 485 n.1.

incident of that judgment. Id., 489. The trial court therefore was not without jurisdiction to implement the sex registration requirement after the defendant began to serve his sentence. Id. Moreover, the sex offender registration requirement did not deprive the trial court of jurisdiction because the statute is a regulatory statute; it is not punitive in nature. Id., 497. Our Supreme Court concluded that "making the factual finding and informing the defendant of these requirements pursuant to § 54-251 did not necessitate any modification, opening or correction of the sentence. In short, the defendant's sentence was not affected by the trial court's factual finding and advisement that he must comply with the statute." Id.

Likewise, in this case, requiring the defendant to submit to the taking of a DNA sample does not affect his robbery related sentences. As our Supreme Court determined in *Waterman*, taking a DNA sample from the defendant is not part of the robbery related convictions; it is a separate regulatory incident of that judgment, embodying significant law enforcement objectives.

On appeal, the defendant argues that § 54-102g is punitive because a felon in the custody of the commissioner who fails to comply with the statute may be prosecuted. Although such a felon who fails to provide a DNA sample may be prosecuted, a conviction for failing to provide a DNA sample does not affect the felon's underlying sentence. A prosecution for failing to comply with § 54-102g applies prospectively and is the result of conduct that occurs after the underlying sentence has begun. The defendant's refusal to provide a DNA sample is new, postrobbery related conviction conduct and constitutes a separate crime.

In ruling on the motion to use reasonable physical force, the court also determined that § 54-102g is regulatory in nature and not a penal statute pursuant to our

Supreme Court's analysis in *State* v. *Kelly*, 256 Conn. 23, 92–93, 770 A.2d 908 (2001). *Kelly* also concerned Megan's Law; see General Statutes (Rev. to 1997) §§ 54-102r and 54-102s; which required sexual offenders to register with the local chief of police. *State* v. *Kelly*, supra, 90. The defendant in *Kelly* challenged a sentence that required him to register as a sex offender as a violation of the ex post facto clause. Id. In resolving that constitutional challenge to Megan's Law, our Supreme Court adopted the test used by the United States Court of Appeals for the Second Circuit when it upheld the constitutionality of the registration and notification provisions of New York's sex offender registration statute. Id., 94; see *Doe* v. *Pataki*, 120 F.3d 1263, 1285 (2d Cir. 1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1066, 140 L. Ed. 2d 126 (1998). In *Doe*, the Second Circuit found that New York's sex offender registration statute was a regulatory statute, not a punitive one. *State* v. *Kelly*, supra, 92.

The *Doe* test consists of two parts. First, a court is to determine "whether [the legislature], in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where [the legislature] has indicated an intention to establish a civil penalty, [the court must determine] whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, [the court has] noted that only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." (Internal quotation marks omitted.) Id.; see also *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).

"In *Doe*, the court first determined that the legislature did not intend the statute to be punitive and that the [statute's] text and core structural features reasonably bear out its stated nonpunitive goals of protecting the

public and facilitating future law enforcement efforts."
(Internal quotation marks omitted.) *State* v. *Kelly*,
supra, 256 Conn. 92. The trial court in this case deter-
mined that the General Statutes (Rev. to 2003) § 54-
102g (d)[12] provides the overarching, nonpunitive goal
of maintaining a DNA data bank to assist in future
criminal investigations. It also identified specific provi-
sions within the statute that demonstrate its regulatory
nature. The DNA data bank legislation now has provi-
sions for collecting the DNA samples; see General Stat-
utes § 54-102h; conducting DNA analysis; see General
Statutes § 54-102i; disseminating information in the
DNA data bank; see General Statutes § 54-102j; penaliz-
ing the unauthorized use or dissemination of DNA data
bank information; see General Statutes § 54-102k;
expunging DNA data bank records on exoneration; see
General Statutes § 54-102*l*; and creating a DNA data
bank oversight panel. See General Statutes § 54-102m.
The court found that the ultimate purpose of § 54-102g
is to create a DNA data bank that will assist law enforce-
ment in solving crimes and may in some cases lead to
the exoneration of innocent parties.[13] We agree with

[12] General Statutes (Rev. to 2003) § 54-102g (d) provides: "The analysis
shall be performed by the Division of Scientific Services within the Depart-
ment of Public Safety. The identification characteristics of the profile
resulting from the DNA analysis shall be stored and maintained by the
division in a DNA data bank and shall be made available only as provided
in section 54-102j."

[13] DNA analysis has led to the exoneration of certain convicted individuals
in this state. This court has recognized an instance in which a "misidentifica-
tion has occurred and injustice has resulted." *State* v. *Miles*, 132 Conn. App.
550, 559 n.3, 32 A.3d 969 (2011), cert. denied, 303 Conn. 934, 36 A.3d 692
(2012); see id., 560 n.3, citing "Special Acts 2007, No. 07-5, § 1, 'An Act
compensating James C. Tillman for his Wrongful Conviction and Incarcera-
tion' (compensating Tillman $5 million for wrongful arrest, prosecution,
conviction and incarceration on charges of kidnapping and sexual assault
which charges were dismissed on July 11, 2006)"; see also *Skakel* v. *State*,
295 Conn. 447, 706, 991 A.2d 414 (2010) (*Palmer, J.*, dissenting), citing "C.
Nolan 'Freeing Inmates, Changing Laws,' Conn. L. Trib., August 17, 2009,
pp. 1, 9 (more than 240 inmates across country have been exonerated due
to DNA evidence, including three in this state, namely, James Tillman,
released from prison after serving seventeen years for robbery and sexual

the court's conclusion that the core text of § 54-102g demonstrated that its purpose is consistent with regulatory legislation.

The second part of the *Doe* test is the determination of whether the civil penalty in the statute so overwhelms its regulatory purpose, as to be punitive as articulated in *Kennedy* v. *Mendoza-Martinez*, supra, 372 U.S. 168–69; *State* v. *Kelly*, supra, 256 Conn. 92. The *Mendoza-Martinez* factors include "[w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . . [W]hether a sanction intended as regulatory or nonpunitive is so punitive in fact as to violate the ex post facto prohibition is a highly context specific matter." (Citations omitted; internal quotation marks omitted.) *State* v. *Kelly*, supra, 92–93.[14]

The court found that § 54-102g deems a felon's refusal to provide a DNA sample a class D felony.[15] It also

assault that he did not commit, Miguel Roman, released after serving approximately nineteen years following his wrongful conviction of murder, and Kenneth Ireland, Jr., released after serving twenty-one years following his exoneration for crimes of sexual assault and murder)."

[14] Decisions of the federal courts provide further guidance in the application of the two-pronged test. "If the disability or restraint is minor and indirect, its effects are unlikely to be punitive." (Internal quotation marks omitted.) *Johnson* v. *Quander*, 370 F. Supp. 2d 79, 98 (D.D.C. 2005), aff'd, 440 F.3d 489 (D.C. Cir.), cert. denied, 549 U.S. 945, 127 S. Ct. 103, 166 L. Ed. 2d 255 (2006). Generally, the taking of a DNA sample involves minimal or no restraint. See *United States* v. *Coccia*, 598 F.3d 293, 299 (6th Cir. 2010); *United States* v. *Harley*, 315 Fed. Appx. 437, 442 (3d Cir.), cert. denied, 558 U.S. 854, 130 S. Ct. 138, 175 L. Ed. 2d 90 (2009).

[15] See General Statutes (Rev. to 2011) § 54-102g (i).

found that Megan's Law contains a similar provision that subjects violators of the registration requirement to a class D felony conviction. See General Statutes §§ 54-251 (e), 54-252 (d), 54-253 (e) and 54-254 (b). That penalty, the court found, did not deter our Supreme Court from concluding that the registration requirement under Megan's Law is regulatory. See *State* v. *Kelly*, supra, 256 Conn. 93–94. In this case, the trial court also found that § 54-102g provides for no greater penalty on felons who refuse to provide a DNA sample than on those felons who fail to register as sex offenders under Megan's Law. It concluded that standing alone, the penalty provision of General Statutes (Rev. to 2003) § 54-102g (g), as amended by P.A. 04-188, § 1, does not render the statutory scheme for the collection of DNA data punitive in effect.

We agree with the persuasive reasoning and analysis of the trial court. Moreover, we are bound to abide by the decisions of our Supreme Court, which has concluded that the penalty provision under Megan's Law did not change the regulatory purpose of that law. We also are mindful of the rules of statutory construction: "[T]he legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires [this court] to read statutes together when they relate to the same subject matter . . . ." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 828, 14 A.3d 982 (2011). Because the statute is regulatory, not punitive, we conclude that the court properly determined that it had subject matter jurisdiction to rule on the state's motion to use reasonable physical force.

B

The defendant's second claim is that application of § 54-102g to him violates his right to due process and

the ex post facto clause of the federal constitution. See U.S. Const., art. I, § 10. We do not agree.

"The basic principle that a criminal statute must give fair warning of the conduct that it makes a crime has been recognized by [the United States Supreme] Court. . . . The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be criminally responsible for conduct which he could not reasonably understand to be proscribed. . . . It is settled that the fair-warning requirement embodied in the [d]ue [p]rocess [c]lause prohibits the [s]tates from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed." (Citations omitted; internal quotation marks omitted.) *State* v. *Courchesne*, 296 Conn. 622, 721, 998 A.2d 1 (2010).

"The ex post facto prohibition forbids . . . the [s]tates [from] enact[ing] any law [that] imposes a punishment for an act [that] was not punishable at the time it was committed . . . or imposes additional punishment to that then prescribed. . . . Through this prohibition, the [f]ramers sought to assure that legislative [a]cts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. . . . [T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." (Citations omitted; internal quotation marks omitted.) Id., 727. The ex post facto clause prohibits a legislature from increasing the punishment beyond what was prescribed when the crime was committed. *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 817–18, 786 A.2d 1091 (2002). "To fall within

the ex post facto prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and must disadvantage the offender affected by it . . . by altering the definition of criminal conduct or increasing the punishment for the crime . . . ." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 195, 842 A.2d 567 (2004).

The defendant was sentenced to imprisonment in the custody of the commissioner pursuant to the robbery related convictions in 1997. The court found that § 54-102g (a) was amended pursuant to P.A. 03-242, § 1, to provide that all felons in the custody of the commissioner were required to submit to the collection of a DNA sample. It also found that, for the defendant to prevail on his ex post facto claim, the statute at issue must be penal in nature. As we concluded in part I A of this opinion, § 54-102g is a regulatory statute, not a penal one. Most significantly, the defendant knew of the amended statute at the time he refused to provide a DNA sample. In other words, the statute was applied prospectively, not retroactively. The defendant's claim therefore fails.[16]

## C

The defendant's third claim is that the legislature did not give retroactive effect to the P.A. 03-242, § 1,

[16] In its appellate brief, the state cites numerous cases that have held that the federal and state statutes requiring prisoners or convicted felons to provide a DNA sample do not violate the ex post facto clause even when the convictions on which the requirement is predicated occurred before the enactment of the regulatory statute for DNA collection was enacted. See, e.g., *United States* v. *Coccia*, 598 F.3d 293, 296–99 (6th Cir. 2010); *United States* v. *Hook*, 471 F.3d 766, 776 (7th Cir. 2006), cert. denied, 549 U.S. 1343, 127 S. Ct. 2081, 167 L. Ed. 2d 515 (2007); *Sanders* v. *Dept. of Corrections*, 379 S.C. 411, 422–23, 665 S.E.2d 231 (App. 2008), cert. denied, 2009 S.C. LEXIS 480 (S.C. February 20, 2009); *Kellogg* v. *Travis*, 100 N.Y.2d 407, 410, 796 N.E.2d 467, 764 N.Y.S.2d 376 (2003). Judge Mullarkey's analysis of the issues is consistent with those cases.

amendment to § 54-102g. We agree that the statute contains no language that it is to be applied retroactively, but the defendant's refusal to provide a DNA sample occurred subsequent to the enactment of the 2003 amendment. The statute, therefore, was not applied retroactively as to him.

In support of his claim, the defendant relies on General Statutes § 55-3, which provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

The relevant portion of § 54-102g (a), as amended by P.A. 03-242, § 1 (a), provides: "Any person who is convicted of a . . . felony and is sentenced to the custody of the Commissioner of Correction shall prior to release from custody . . . submit to the taking of a blood or other biological sample for DNA . . . ." The defendant argues that the meaning of § 54-102g (g) is plain and unambiguous and contains no language that it shall be applied retroactively.

"[T]he retroactive application of a law occurs only if the new or revised law was not yet in effect on the date that the relevant events underlying its application occurred." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 681, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). In this case, the relevant events occurred, as alleged in

the information, on March 17, 2010. On that date, the defendant was in the custody of the commissioner, and he refused to submit to the taking of a biological sample for DNA analysis. Section 54-102g applies to any person who is a convicted felon and in the custody of the commissioner. The statute authorizes the commissioner to obtain a DNA sample from a felon in his or her custody prior to release. The defendant refused to comply with the commissioner's direction to submit to the taking of a DNA sample. That refusal constitutes the relevant conduct to which § 54-102g (g) applies. The defendant therefore cannot complain that the statute was applied retroactively because the relevant conduct occurred after the amended legislation was enacted. Moreover, it does not impose any new obligation on his robbery related convictions or sentences.

D

The defendant's fourth claim is that § 54-102g, as amended by P.A. 03-242, § 1, does not provide for the use of reasonable force to obtain a DNA sample from a felon in the custody of the commissioner. We agree that at the time the commissioner directed the defendant to provide a DNA sample, § 54-102g did not contain language permitting the state to use force to obtain a DNA sample. But see footnote 5 of this opinion. The court, however, found that permitting the state to use reasonable physical force to obtain a DNA sample was implicit in the statute in order to achieve the legislature's goal of creating a DNA data bank to assist with future criminal investigations. We agree with the court that depriving the state of the opportunity to use reasonable force would fatally undermine the statute.

Section 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If,

after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

In ruling on the state's motion to use reasonable physical force, the court construed General Statutes (Rev. to 2011) § 54-102g (a), which provides in relevant part that "[a]ny person who has been convicted of a . . . felony . . . *shall,* prior to release from custody and at such time as the commissioner may specify, *submit to the taking of a blood or other biological sample for DNA* . . . analysis." (Emphasis added.) In support of its motion, the state contended that the word "shall" requires the defendant to provide a DNA sample at the request of the commissioner.

"It is well established that the legislature's use of the word shall suggests a mandatory command. . . . Nevertheless, we also have recognized that the word shall is not [necessarily] dispositive on the issue of whether a statute is mandatory." (Citation omitted; internal quotation marks omitted.) *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC,* 294 Conn. 311, 319–20, 984 A.2d 676 (2009). "[T]o determine whether a statute's provisions are mandatory [the court has] traditionally looked beyond the use of the word shall and examined the statute's essential purpose. . . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience." (Internal quotation marks omitted.) *Wysocki* v. *Ellington,* 109 Conn. App. 287, 298, 951 A.2d 598, cert. denied, 289 Conn. 934, 958 A.2d 1248 (2008).

General Statutes (Rev. to 2011) § 54-102g is entitled: "Blood or other biological sample *required* from certain offenders for DNA analysis." (Emphasis added.) The court found that the purpose of § 54-102g is to obtain DNA samples from felons, among others, to be included in a DNA data bank and that the requirement to submit to the taking of such a sample is mandatory. Submitting a sample therefore is a matter of substance. The statute is silent as to whether the state could obtain the required DNA sample by reasonable force. Because the state and the defendant presented conflicting constructions of the statute, the court concluded that § 54-102g is ambiguous and turned to extratextual sources for guidance.[17] See *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 202, 3 A.3d 56 (2010) (consult extratextual sources when language of statute not clear and unambiguous). We agree that § 54-102g, as amended by P.A. 03-242, § 1, is ambiguous and conclude that the court appropriately consulted the legislative history to discern its meaning. See General Statutes § 1-2z.

Although the legislative history did not clarify the precise question presented, the court found that the legislators intended felons to submit a DNA sample and that their debate touched on the overall importance of the DNA data bank for law enforcement and public safety purposes. Given the legislative history's stated importance of the objective to maintain a DNA data bank, it was apparent to the court that to implement the purpose of the data bank, it must be comprehensive. The DNA data bank would be incomplete and of less value as a law enforcement tool unless it received submissions from all offenders subject to § 54-102g. The court concluded, therefore, that the only way to ensure

---

[17] We do not opine that the language of a statute is ambiguous merely because the parties disagree as to its meaning. Whether a statute is ambiguous is a legal determination to be made by the court. See *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 631, 6 A.3d 60 (2010).

that the purpose of the statute is effectuated fully is to permit compulsory taking of DNA samples from each person required to submit one.

On appeal, the defendant argues that, at the time of his conviction, § 54-102g did not authorize the use of reasonable force and that the only remedy for a felon's failure to provide a DNA sample was prosecution for noncompliance. He has been found guilty for failing to provide a DNA sample and sentenced to one year in prison. He contends, therefore, that he cannot also be forced to provide a DNA sample. We disagree. To meet the legislative goal of establishing a DNA data bank to assist with future criminal prosecutions, the state must obtain a DNA sample from all felons in the custody of the commissioner. Prosecuting the defendant pursuant to § 54-102g (g) is the penalty for failing to provide a sample; it does not accomplish the goal of obtaining a sample of his DNA to include in the data bank.

In granting the state's motion to use reasonable physical force, the court provided the following analysis. "Department of correction administrative directive 9.3, § 8, provides that '[t]he Director of Offender Classification and Population Management shall issue and revise as necessary guidelines for . . . the collection of biological samples for the purposes of Felony DNA.' " The court found that department guidelines created pursuant to that directive provide that, upon an inmate's refusal to submit a DNA sample, a "DNA Advisement/ Refusal Form" (refusal form) must be completed.[18] The refusal form notifies an inmate that his refusal to submit a DNA sample is a violation of § 54-102g and subjects him to arrest. The refusal form also advises the inmate that a court order may be sought to authorize the use of force to obtain the DNA sample. The department has

_____

[18] See DNA Felony Policy (Rev. 10/2008), available at www.ct.gov/doc/lib/doc/pdf/PolicyDNAFelony.pdf (last visited June 11, 2013).

indicated that the use of force is an option, as ordered by the court, to collect a DNA sample for felony offenders who refuse to comply with § 54-102g. At the time the court ruled on the state's motion to use reasonable force, the legislature had not taken action to modify the department's policy. The court construed the legislature's failure to act as inherent acceptance of the department's DNA collection requirement as set forth in § 54-102g. But see footnote 16 of this opinion.

The court concluded that the legislature's mandate in § 54-102g (a) that certain felons submit a DNA sample must necessarily include permission for the department to use force to ensure compliance with the statute, despite the criminal penalty contained in § 54-102g (g). To conclude otherwise would frustrate the legislature's fundamental objective to maintain a DNA data bank. See *State* v. *Peeler*, 271 Conn. 338, 436, 857 A.2d 808 (2004) (statutes are to be interpreted in accord with fundamental purpose), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005); *Rendelman* v. *Scott*, 378 Fed. Appx. 309, 313 (4th Cir. 2010) ("[T]he [s]tate's right to obtain the DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance. Otherwise, the [s]tate's right can be rendered meaningless by an inmate who refuses to grant permission . . . ."). We agree with the court's cogent analysis and conclusion.

Moreover, in 2011 the legislature amended § 54-102g by P.A. 11-144, § 1, to permit the state to use reasonable force to obtain a DNA sample from a felon in the custody of the commissioner. An amendment to an existing statute that "in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 263 Conn. 358, 368–69, 819 A.2d 822 (2003). The state may not use reasonable

force unless a felon such as the defendant refuses to provide a sample.[19]

We therefore affirm the judgment granting the state's motion to use reasonable physical force to obtain a DNA sample from the defendant.

## II

## AC 33387

In his second appeal, the defendant claims that Judge Carbonneau wrongly convicted him of refusing to give a DNA sample pursuant to General Statutes (Rev. to 2003) § 54-102g, as amended by P.A. 04-188, § 1. He claims that application of the statute to him violated his right to due process and the ex post facto clause of the federal constitution. We do not agree.

The following facts are applicable to this appeal. On March 17, 2010, department of correction employees attempted to take a DNA sample from the defendant. The defendant believed that the statute did not apply to him and refused to provide a DNA sample. Thereafter, the state charged him with violating § 54-102g (g). On November 16, 2010, the self-represented defendant filed a motion to dismiss appointed counsel and a motion to dismiss the charges against him. After canvassing the defendant, the court, *Vitale, J.*, granted the defendant's motion to dismiss counsel, but appointed standby counsel. Judge Vitale found that the defendant had waived his right to a jury trial.

On February 25, 2011, the defendant appeared before Judge Carbonneau and argued his motion to dismiss

---

[19] We also emphasize the inherent protections relative to § 54-102g: DNA samples are to be taken by a person licensed to practice medicine and surgery in Connecticut, a registered nurse, a qualified laboratory technician or a phlebotomist. See General Statutes § 54-102h (b). The instruments used to draw blood are to be "[c]hemically clean sterile disposable needles and vacuum draw tubes . . . ." General Statutes § 54-102h (d) (1).

the charges. The defendant claimed that the retroactive application of § 54-102g to him violated his right to due process under both the state and federal constitutions. He also claimed that at the time of his convictions on the robbery related charges, the statute did not apply to him and to apply the amended statute to him violated the ex post facto clause. He also relied on § 55-3, which provides that no statute imposing a new obligation could be imposed on him retroactively. The court denied the motion to dismiss.[20]

The state presented evidence but the defendant did not. The court found the defendant guilty of refusing to provide a DNA sample for analysis in violation of § 54-102g (g). In ruling on the defendant's motion to dismiss the charge, the court concluded that the § 54-102g DNA sample requirement did not enlarge the defendant's robbery related sentences and that the purpose of the statute was to assist in future criminal investigations and therefore was regulatory. Judge Carbonneau adopted the reasoning of Judge Mullarkey's February 8, 2011 memorandum of decision authorizing the use of reasonable force to obtain a DNA sample. See part I of this opinion. Judge Carbonneau sentenced the defendant to one year incarceration consecutive to the sentences he was then serving. The defendant appealed.

The claims and arguments raised by the defendant in his appellate brief with regard to his conviction of having refused to provide a DNA sample are identical to the claims he raised in his appeal from the judgment

---

[20] In denying the defendant's motion to dismiss the charge, Judge Carbonneau adopted the reasoning of Judge Mullarkey when he granted the state's motion to use reasonable force to obtain a DNA sample from the defendant. More specifically, Judge Carbonneau found that § 54-102g is regulatory and did not expand the defendant's sentences on the robbery related convictions. He also found that the legislature intended § 54-102g to create a DNA data bank that would assist in future criminal investigations.

granting the state's motion to use reasonable physical force to obtain a DNA sample. See part I of this opinion. We therefore adopt our reasoning and conclusions in part I of this opinion to resolve the claims herein. See *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 200, 203–204, 26 A.3d 671 (2011) (adopting reasoning of companion case). We thus affirm the court's judgment of conviction.

The judgments are affirmed.

In this opinion the other judges concurred.